1

Sophia Segal
Email: sophiamedium@mac.com

2

4639 Lehrer Drive
San Diego, CA  92117

3

Telephone: 858-220-0465

4

Plaintiff Pro Se

5

SOPHIA SEGAL

**FILED**

AUG 3 1 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ *TH* DEPUTY

6

7

8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

SOHIA SEGAL,

)  CASE NO.  20cv1382-BAS (JLB)
)

12

               Plaintiff,

)  **PLAINTIFF'S MEMORANDUM OF**
)  **POINTS AND AUTHORITIES IN**

vs.

)  **OPPOSITION TO DEFENDANTS'**

13

)  **MOTION FOR JUDGMENT ON THE**

JASON SEGEL, et al.,

)  **PLEADINGS**

14

)

               Defendants.

)

15

)  Date: TBD
)  Time: TBD

16

)  Court: 4B (Hon. Cynthia A. Bashant)
)

17

)
)

18

)

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Judgment On The Pleadings Cannot Be Entered Based
          On The Record Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    This Motion Should Be Denied Because The Allegations
          Of The First Amended Complaint Are Sufficient
          To Allege Copyright Infringement . . . . . . . . . . . . . . . . . . . . . . 8

          1.    The FAC Alleges A "Reasonable Possibility"
                Of Access . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          2.    The Script and the Accused Work are
                Substantially Similar . . . . . . . . . . . . . . . . . . . . . . . . . 14

          3.    That Defendants Used The Exact Same Title
                As Plaintiff Shows Copyright Infringement . . . . . . . . . . . . . 23

    C.    This Motion Should Be Denied Because Defendants'
          Challenges To Plaintiff's Trademark Claim Raise
          Triable Issues Of Fact That Cannot Be Resolved By
          A Motion For Judgment On The Pleadings . . . . . . . . . . . . . . . . . . 24

1

TABLE OF AUTHORITIES

2

Cases:

3

4

*Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . 15

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6

7

*Astor-White v. Strong*, 733 F. App'x 407 (9th Cir. 2018) . . . . . . . . . . . . . . . . . 6

8

*Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . 13

9

10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . 4, 5

11

*Benay v. Warner Bros. Ent., Inc.*, 607 F.3d 620 (9th Cir. 2010) . . . . . . . . . . . . . 23

12

13

*Boram v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 4

14

*Briggs v. Blomkamp*, 70 F.Supp.3d 1155 (C.D. Cal. 2014) . . . . . . . . . . . . . . . 12

15

16

*Cabell v. Zorro Prods, Inc.*, 2017 WL 2335597 (N.D. Cal. May 30, 2017) . . . . . . 7

17

18

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19

*Campbell v. U.S.*, 365 U.S. 85 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20

21

*Dep't of Parks Recreation v. Bazaar Del Mundo Inc.*,
448 F.3d 1118 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

22

23

*Erickson v. Pardus*, 551 U.S. 89 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

24

25

*French West, Inc. v. Macy's Inc.*,
2013 WL 12133844 (C.D. Cal. Jan. 29, 2013) . . . . . . . . . . . . . . . . . . . . . . . . 7

26

*G.E.J. Corporation v. Uranium Aire, Inc.*, 311 F.2d 749 (9th Cir. 1962) . . . . . . . 11

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

ii

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . 4

*Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018) . . . . . . . . . . . . . . . 24

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738 (1976)  . . . . . . . . . . . 4

*Jason v. Fonda*, 526 F. Supp. 774 (C.D. Cal. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059 (9th Cir. 1981) . . . . . . . 9, 11

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir. 1994) . . . . . . . 15

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012) . . . . 7, 14

*Loomis v. Cornish*, 836 F.3d 991 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Marcus v. ABC Signature Studios, Inc.*,
279 F. Supp. 3d 1056 (C.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Meta–Film Assocs., Inc. v. MCA, Inc*, 586 F.Supp. 1346 (C.D. Cal. 1984) . . . . 10, 11

*Minx Int'l, Inc. v. Around the World Apparel, Inc.*,
2016 WL 7496745 (C.D. Cal. July 29, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moss v. United States Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) . . . . . . . . . . . . 4, 5

*Paramount Pictures Corp. v. Carol Pub. Group*,
11 F. Supp. 2d 329 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pollution Denim & Co. v. Pollution Clothing Co.*,
547 F. Supp. 2d 1132 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . 14

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 3, 24

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990)  . . . . . . . . . . . . . . . . . 8, 15, 22, 23

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir.1936) . . . . . . . . . 15

*Sid & Marty Krofft Television v. McDonald's Corp.*,
562 F.2d 1157 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007) . . . . 4, 5

*Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)  . . . . . . . . . . . . . . . . . . . . . 12

*Smith v. AMC Networks, Inc.*,
2019 WL 402360 (N.D. Cal. Jan. 31, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 22

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) . . . . . . . . . 11, 12, 13

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
715 F.2d 1327 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Unicolors, Inc. v. Wet Seal, Inc.*, 2013 WL 1953727 (C.D. Cal. May 9, 2013) . . . . 9

*U.S. v. New York, N.H. & H.R. Co.*, 355 U.S. 253 (1957) . . . . . . . . . . . . . . . . . . . 11

*William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 15

*Walker v. University Books, Inc.*, 602 F.2d 859 (9th Cir. 1979) . . . . . . . . . . . . . . . 14

Statutes & Rules:

15 U.S.C. § 1057(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

15 U.S.C. § 1115(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed R. Civ. Proc. 8  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed R. Civ. Proc. 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed R. Civ. Proc. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Other Authorities:

Ninth Circuit Model Jury Instruction 17.16 (2014) . . . . . . . . . . . . . . . . . . . . . 9

4 Melville B. Nimmer & David Nimmer,
*Nimmer on Copyright* § 13.02[A] (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4 Melville B. Nimmer & David Nimmer,
*Nimmer on Copyright* § 13.02[B] (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4 Melville B. Nimmer & David Nimmer,
*Nimmer on Copyright* § 13.02[B][3] (2015) . . . . . . . . . . . . . . . . . . . . . . . . . 14

3 William F. Patry, *Patry on Copyright* § 9:86.50 (2020) . . . . . . . . . . . . . . . . . 14

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

v

## PRELIMINARY STATEMENT[1]

In or about 2012, plaintiff Sophia Segal ("Plaintiff") completed a Script for a unique and original story that she entitled "Otherworld" (the "Script").[2] The Script tells the story of two characters (a female named Alethea and a male named Julian) who share the same mission: eradicating the evil creator of a virtual reality fantasy land called "Otherworld." Alethea's brain and body are damaged by a horrific accident, which results in severe brain injuries and induces a coma, paralysis and "locked-in syndrome."

The trauma of the accident triggers Alethea's fragmented psyche and catapults her into the fantastical virtual reality land of Otherworld where she encounters a world of surrealistic landscapes and dreamlike terrains inhabited by hostile spirits, strange creatures, odd archetypes and whimsical characters. Alethea travels through Otherworld with a series of guides to retrieve supernatural powers, destroy dark forces and ward off her impending death.

Julian has a psychic connection to Alethea and embarks on a journey to find Alethea and the entrance to Otherworld. Julian and Althea's individual journeys come to a climax when they unite at the entrance to Otherworld and cross over together into Otherworld. Their journey continues in Otherworld with the inevitable destruction of the evil creator of Otherworld.

For several years after completing the Script, Plaintiff widely exposed the Script to a wide variety of Hollywood professionals by posting the Script online at "The Blacklist" (an online platform where actors, producers and other creative

---

[1] The facts discussed in this memorandum are from the allegations of Plaintiff's First Amended Complaint which, as the Court knows, must be accepted as true for purposes of this motion for judgment on the pleadings.

[2] The copyrighted works at issue here are the Script (Exhibit 1) and a treatment authored by Plaintiff based on the Script (Exhibit 2). The Script and the treatment are sometimes collectively referred to herein as the "Script" and analyzed together.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1   personnel go to source content) and sending the screenplay treatment (Otherworld

2   Teaser) directly to talent agents, including select talent agents at the agency (WME)

3   which represents defendant Jason Segel and his co-writing partner Kirsten Miller.

4        Perhaps not surprisingly given the widespread exposure of the Script and the

5   submission of the Script to defendant Segel's talent agency, at San Diego Comic-Con

6   in 2017 Plaintiff discovered a book written by defendant Segel (and Otherworld co-

7   author Kristen Miller who is no longer a defendant in this case) bearing the title

8   "Otherworld" (the "Accused Work"), the exact same title of Plaintiff's copyrighted

9   works.

10       As the Court will learn in this memorandum, the Accused Work is strikingly

11  similar to the Script (and Otherworld treatment) in a number of critical respects:

12       In summary, like the Script, the Accused Work tells the story of two characters

13  (named Kat and Simon instead of Alethea and Julian) who separately travel through a

14  virtual reality world also called "Otherworld" with a variety of guides and eventually

15  unite to destroy the creator of Otherworld (just like the Script). Like Alethea in the

16  Script, Kat's journey into Otherworld is triggered by a traumatic event (an explosion

17  in a factory) that results in a coma and (exactly the same as the Script) "locked-in

18  syndrome." Simon travels through Otherworld's surrealistic landscapes and

19  dreamlike terrains in his search of Kat and encounters a variety of hostile spirits,

20  strange creatures, and whimsical characters just like Julian in the Script.

21       Even though Plaintiff has not yet taken any discovery, by this motion

22  Defendants seek a judgment on the pleadings and ask the Court to dismiss Plaintiff's

23  case with prejudice. Ignoring the well-established principles governing motions for

24  judgment on the pleadings and the allegations of the First Amended Complaint, and

25  drawing every inference in their own favor instead of Plaintiff's favor, Defendants

26  argue that they are entitled to judgment at the pleadings stage because Plaintiff

27

28
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

supposedly has not adequately pleaded that Defendants had "access" to the Script and because there supposedly is not enough similarity between the Script and the Accused Work to satisfy the "extrinsic test" for copyright infringement. Neither argument has any merit.

Notwithstanding the widespread exposure of Plaintiff's Script and Plaintiff's submission of the screenplay treatment (Otherworld Teaser) directly to agents at defendant's Segel's talent agency, Defendants would have the Court believe that the significant number of similarities between the Script and the Accused Work merely are coincidental and that the Accused Work is the product of independent creation by defendant Segel and his co-author. Such argument simply is not credible given the substantial similarity between the core story and critical details of the Script and the Accused Work

The allegations of Plaintiff's First Amended Complaint (which must be accepted as true and must be interpreted in favor of Plaintiff) more than sufficiently allege access. And even a cursory comparison of the Script and the Accused Work demonstrates sufficient similarity between the two works to defeat Defendants' motion. The present motion accordingly must be denied in its entirety.[3]

## ARGUMENT

A.   Judgment On The Pleadings Cannot Be Entered Based On The Record Here

Federal Rule of Civil Procedure 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial. [Fed. R. Civ. P. 12(c).] The standard for determining a Rule 12(c) motion for judgment on

---

[3] Defendants also seek judgment on the pleadings on Plaintiff's trademark infringement claim based on the First Amendment theory discussed in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). As discussed herein, the trademark infringement claim and application of the Rogers doctrine present questions of fact that cannot be resolved by a motion for judgment on the pleadings.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

3

1    the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss.

2    [*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 & n.4

3    (9th Cir. 2011).]

4         Motions to dismiss under Fed. R. Civ. P. 12(b)(6) (and thus Rule 12(c)

5    motions) are generally disfavored. They are to be rarely granted and then only in

6    extreme circumstances.  [*See, e.g., Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425

7    U.S. 738, 746, 96 S. Ct. 1848, 1853 (1976); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d

8    246, 249 (9th Cir. 1997).]

9         In ruling on a motion to dismiss or a motion for judgment on the pleadings, the

10   Court must accept as true all factual allegations in the complaint, and must draw all

11   reasonable inferences from those allegations, construing the complaint liberally in the

12   light most favorable to the plaintiff. [*Moss v. United States Secret Serv.*, 572 F.3d

13   962, 967-68 (9th Cir. 2009); *William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*,

14   588 F.3d 659, 662 (9th Cir. 2009); *Boram v. Bogan*, 320 F.3d 1023, 1028 (9th Cir.

15   2003).]

16        Nothing more than notice pleading is required. [*Erickson v. Pardus*, 551 U.S.

17   89, 93 (2007).]   Rule 8 of the Federal Rules of Civil Procedure requires, not a

18   specific quantity of facts, but simply "a short and plain statement of the claim

19   showing that the pleader is entitled to relief." [*Bell Atlantic Corp. v. Twombly*, 550

20   U.S. 544, 555 (2007).]

21        "[A] well-pleaded complaint may proceed even if . . . actual proof of those

22   facts is improbable, and a recovery is very remote and unlikely." [*Twombly*, 550 U.S.

23   at 556 (quotations omitted).]  "Specific facts are not necessary," and a complaint need

24   only give the defendant fair notice of the claims and grounds upon which they rest.

25   [*Erickson*, 551 U.S. 89, 93 (2007); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506

26   F.3d 832, 841 (9th Cir. 2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1    (detailed factual allegations are not required); *see also* <u>Ashcroft v. Iqbal</u>, 556 U.S.

2    662, 677-78 (2009).]

3          The factual allegations of Plaintiff's First Amended Complaint (the "FAC")

4    need only "be enough to raise a right to relief above the speculative level, . . . on the

5    assumption that all the allegations in the complaint are true (even if doubtful in fact)."

6    [*Twombly*, 550 U.S. at 555; *Skaff*, 506 F.3d at 842.]  Allegations are not to be

7    discounted because they are "unrealistic or nonsensical," but rather because they state

8    a legal conclusion.  [*Moss*, 572 F.3d at 969.]  To survive a motion for judgment on

9    the pleadings, there must simply be "enough facts to state a claim to relief that is

10   plausible on its face."  [*Twombly*, 127 S. Ct. at 1974.]  Facial plausibility exists

11   "when the plaintiff pleads factual content that allows the court to draw the reasonable

12   inference that the defendant is liable for the misconduct alleged."  [*Iqbal*, 556 U.S. at

13   677-78.]

14         In this case, Defendants argue that judgment on the pleadings should be

15   entered on Plaintiff's copyright claim on the ground that the allegations of the FAC

16   supposedly do not allege a plausible theory of access to the Script and screenplay

17   treatment (Otherworld Teaser) by Defendants.  Such argument simply is not correct

18   and flies in the face of the well-established principles that govern this motion as

19   discussed above – while Defendants may disagree that the FAC alleges a plausible

20   theory of access, such allegations must be accepted as true for purposes of this

21   motion.

22         Defendants also seek judgment on Plaintiff's copyright claim on the ground

23   that the allegations of the FAC do not establish that there is substantial similarity

24   between the Script and the Accused Work as is required to establish copyright

25   infringement.

26

27

28

To support this argument, Defendant has submitted copies of the Script (Exhibit 1), the screenplay treatment (Exhibit 2), and a version of the Accused Work (Exhibit 3), and asks the Court to take judicial notice of these three works. The Script is 55 pages, the treatment is 14 pages, and the version of the Accused Work submitted by Defendants is 374 pages. So Defendants apparently expect the Court to ignore the detailed allegations of the FAC that establish substantial similarity and instead read and analyze the 443 pages of material submitted by Defendants and determine for itself (without the benefit of any expert analysis) whether there is substantial similarity.[4]  The Court cannot and should not do so.

The decision by Judge Koh in *Smith v. AMC Networks, Inc.*, 2019 WL 402360 (N.D. Cal. Jan. 31, 2019) illustrates quite clearly why Defendants are not entitled to and cannot be granted judgment on the pleadings on the record here. The *Smith* case is analogous to this case. The plaintiff in *Smith* claimed that Defendants' television series *Fear the Walking Dead* infringed Plaintiff's copyright in a comic book called *Dead Ahead.*

Just like Defendants here, the defendants in *Smith* brought a motion to dismiss Plaintiff's operative complaint, claiming that application of the "extrinsic test" showed there was no substantial similarity between Plaintiff's comic book and Defendants' television series. Like Defendants here, the defendants in *Smith* asked the court to take judicial notice of Plaintiff's works and Defendants' television series, which the court agreed to do.

Given the defendants' request for the court to take judicial notice of the works at issue there, the court in *Smith* determined that the defendants were asking for

---

[4] This is exactly the type of unreasonable burden imposed on the Court that Judge Wardlaw criticized in her concurring opinion in *Astor-White v. Strong*, 733 F. App'x 407 (9th Cir. 2018), where she explained that trial judges should not be deciding issues of substantial similarity at the pleading stage as Defendants ask the Court to do here.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1   summary judgment rather than attacking the plaintiff's pleading by their motion.  The

2   court explained as follows:

> 3   The Ninth Circuit has held that "[g]enerally, the scope of review on a
> motion to dismiss for failure to state a claim is limited to the contents
> 4   of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.
> 2006). Here, what Defendants essentially seek is summary judgment
> 5   because they stray beyond the four corners of the complaint and into
> factual disputes over the similarities and differences between *Dead*
> 6   *Ahead* and *Fear the Walking Dead*, including whether certain
> elements of *Dead Ahead* are protectable under copyright law.

7

8   Judge Koh explained that the Ninth Circuit has cautioned that "[s]ummary

9   judgment is not highly favored on questions of substantial similarity in copyright

10  cases." [*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir.

11  2012).] "*A fortiori*, this same limitation applies to a motion to dismiss." [*Minx Int'l,*

12  *Inc. v. Around the World Apparel, Inc.*, 2016 WL 7496745 (C.D. Cal. July 29, 2016).]

13  Citing the Ninth Circuit decision in *Swirsky v. Carey*, 376 F.3d 841, 845 (9th

14  Cir. 2004), Judge Koh went on to explain that Ninth Circuit law is clear that "[t]he

15  extrinsic test requires analytical dissection of a work and expert testimony."[5] Judge

16  Koh emphasized that "given that Defendants' motions are 12(b)(6) motions, there is

17  no full record to review or any expert testimony upon which the Court may rely."

18  Judge Koh therefore denied the defendants' motion to dismiss because of an

19  insufficient record to allow the court to conduct the extrinsic test, stating "[t]he most

20  prudent course of action is to follow Ninth Circuit precedent, which clearly states that

21  "[t]he extrinsic test requires analytical dissection of a work and expert testimony

22  (*quoting Swirsky*, 376 F.3d at 845)."[6]

23

24  [5] In *Swirsky*, the Ninth Circuit held that where, as here, the copyright owner presents "indicia of a sufficient disagreement concerning the substantial similarity of [the] two works," then the case must be submitted to a trier of fact. [*Swirsky v. Carey*, 376 F.3d

25  841, 844 (9th Cir. 2004), *citing Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992)."

26

27  [6] The *Smith* court noted that other courts have denied motions to dismiss in copyright cases due to an insufficient record. [*See Cabell v. Zorro Prods, Inc.*, 2017 WL

28  **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1    The *Smith* case is on point with this case.  It simply is not reasonable for

2  Defendants to expect the Court to analyze and dissect the 443 pages of materials

3  submitted by Defendants without the benefit of a fully developed factual record or

4  expert testimony. Defendants essentially are asking for summary judgment before

5  discovery and expert analysis.  As was true in *Smith*, the correct and "most prudent"

6  course of action is for the Court to deny the motion without prejudice to a later

7  summary judgment motion if appropriate.[7]

8        B.    This Motion Should Be Denied Because The Allegations Of The First

9              Amended Complaint Are Sufficient To Allege Copyright Infringement

10    Proof of copyright infringement is often highly circumstantial. A copyright

11  plaintiff must prove (1) ownership of the copyright alleged to be infringed; and (2)

12  infringement — that the defendant copied protected elements of the plaintiff's work.

13  [*See Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (citation omitted).][8]

14  Absent direct evidence of copying, proof of infringement involves <u>fact-based</u>

15  showings that the defendant had "access" to the plaintiff's work and that the two

16  works are "substantially similar."  [*Id.*]

17    Defendants claim they are entitled to judgment on the pleadings because the

18  FAC supposedly does not adequately allege access and there is no substantial

19  similarity between the Script and the Accused Work.  These arguments are without

20  merit:

21  _____

22  2335597 (N.D. Cal. May 30, 2017); *French West, Inc. v. Macy's Inc.*, 2013 WL 12133844 (C.D. Cal. Jan. 29, 2013).]

23  [7]  *See also Shaw v. Lindheim*, 919 F.2d 1353, 1358 (9th Cir. 1990) (finding

24  substantial similarity in part because "the respective plots do parallel each other," as demonstrated by expert evidence "illustrat[ing] how the plots in both scripts share a

25  common sequence and rhythm"); *Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir. 1996) (stating the district court properly relied on expert evidence to determine that

26  allegedly copied song elements were unprotected scenes à faire).]

27  [8]  There is no dispute about Plaintiff's ownership of the copyrights at issue.

28

1  1.  The FAC Alleges A "Reasonable Possibility" Of Access

2  The three ways that an aggrieved copyright holder can allege access are

3  succinctly summed up in Ninth Circuit Model Jury Instruction 17.16 (2014) which

4  provides that access may be established by: (1) a "chain of events" connecting

5  plaintiff's work and the defendant's opportunity to view that work; (2) the plaintiff's

6  work being widely disseminated; or (3) a similarity between the plaintiff's work and

7  the defendant's work that is so "striking" that it is highly likely the works were not

8  created independent of one another.

9  The allegations of the FAC establish all three of these methods of access.  Such

10  allegations must be accepted as true and mandate the denial of this motion:[9]

11  a.  Chain of Events

12  Proof of access requires only "an opportunity to view or to copy plaintiff's

13  work." [*Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1162

14  (9th Cir. 1977).]  To demonstrate access, "plaintiff must show that the defendant had

15  a 'reasonable possibility' to view the plaintiff's work." [*Unicolors, Inc. v. Wet Seal,*

16  *Inc.*, 2013 WL 1953727 (C.D. Cal. May 9, 2013).]

17  "[E]vidence that a third party with whom both the plaintiff and defendant were

18  dealing had possession of plaintiff's work is sufficient to establish access by the

19  defendant." [*Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) *quoting* 4

20  Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02[A] (2015);

21  *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981).] "[T]he

22  dealings between the plaintiff and the intermediary and between the intermediary and

23

24  [9] Defendants contend that courts "routinely" dismiss copyright claims on a motion to dismiss where the complaint supposedly does not allege a reasonably possible theory

25  of access. [See Def. Mem. at p. 10, lines 4-11.] However, Defendants only cite four cases over a three-year period from the Central District of California, all of which

26  featured unique facts.  Critically, however, two of the three cases on which Defendants place principal reliance (*Briggs v. Blomcamp* & *Berkic v. Crichton*) were

27  summary judgment cases and the third case on which Defendants principally rely (*Art Attacks, Inc. v. MGA Ent., Inc.*) was a trial decision.

28  **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1   the alleged copier must involve some overlap in subject matter to permit an inference

2   of access." [*Meta–Film Assocs., Inc. v. MCA, Inc*, 586 F.Supp. 1346, 1358 (C.D. Cal.

3   1984).]

4          The FAC contains allegations regarding two separate specific chain of events

5   through which defendant Segel had an adequate opportunity to view the Script.

6   Specifically, the FAC alleges as follows:

7          First, on or about April 3, 2013, Plaintiff uploaded the Script to a website

8   called "The Blacklist," which is an online resources for writers and screenwriters

9   seeking to expose their works to movie industry professionals (like agents, managers,

10  producers, directors, actors, and screenwriters). [FAC ¶¶ 13-15, 17.] Defendant

11  Segel and his agents had access to The Blacklist at all relevant times and have used

12  The Blacklist in the past to source scripts for two movies. [FAC ¶ 16.]

13         Second, in or about 2015, Plaintiff also sent copies of the screenplay treatment

14  (Otherworld Teaser) and information on how to access the Script on The Blacklist to

15  several agents at WME, a prominent Hollywood talent agency that represents artists

16  and content creators, including defendant Segel and his co-author Kristen Miller.

17  [FAC ¶¶ 18-21.] Indeed, the press announcements of the Accused Work start a mere

18  four months after Plaintiff submitted the screenplay treatment and information on

19  how to access the Script on The Blacklist to the agency that represents defendant

20  Segel and Ms. Miller. [FAC ¶¶ 22-23.][10]

21         The truth concerning Defendants' obtainment of, or access to, the offending

22  design is exclusively within their knowledge and records. As such, a copyright

23  plaintiff cannot be expected to plead those facts in detail at the start of a case as

24  Defendants seem to argue here. [*Campbell v. U.S.*, 365 U.S. 85 (1961) (litigant does

25

---

26  [10] In December 2017, after receiving a cease and desist letter from Plaintiff,
    Defendants changed the name of the Accused Work to add the words "last reality."
27  [FAC ¶¶ 26-27.] This conduct seems to evidence a consciousness of guilt.

28  **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
    DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1  not have burden of proof of establishing facts peculiarly within knowledge of

2  adversary); *U.S. v. New York, N.H. & H.R. Co.*, 355 U.S. 253, 256 (1957) (fairness

3  dictates that litigant does not bear burden of establishing facts primarily within

4  knowledge of opposing party); *G.E.J. Corporation v. Uranium Aire, Inc.*, 311 F.2d

5  749, 751 (9th Cir. 1962).]

6        Because this is a motion for judgment on the pleadings, the Court must accept

7  Plaintiff's allegations as true and must draw all reasonable inferences in favor of

8  Plaintiff.  Applying these standards, the allegations of the FAC show (and it certainly

9  can be inferred) that there was a "reasonable possibility" that defendant Segel and his

10  co-author Miller had access to the Script, either from The Blacklist or from the

11  transmission to the agents for defendant Segel and Ms. Miller.  [*See, e.g., Marcus v.*

12  *ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056 (C.D. Cal. 2017) (access

13  established by submission of script to a script writing contest and access to the script

14  by third parties who dealt with defendants).]

15        This is especially true with respect to the submission to Defendants' talent

16  agency – both Plaintiff, defendant Segel, and Ms. Miller dealt with the talent agents

17  on career matters and content creation which satisfies the requirement for access

18  through a third-party intermediary.  [*Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir.

19  2016); *Meta–Film Assocs., Inc. v. MCA, Inc*, 586 F.Supp. 1346, 1358 (C.D. Cal.

20  1984).]

21            b.    Wide Dissemination

22        Since a copyright owner infrequently catches the infringer in the act, "[p]roof

23  of access requires only an opportunity to view or to copy plaintiff's work."  [*Kamar*

24  *International v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981).]  An

25  opportunity to view or copy may be established by evidence that "the plaintiff's work

26  has been widely disseminated."  [*Three Boys Music Corp. v. Bolton*, 212 F.3d 477,

27

28  **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1   482 (9th Cir. 2000), *overruled on other grounds by* <u>Skidmore v. Zeppelin</u>, 952 F.3d

2   1051 (9th Cir. 2020).]

3        Access based on wide dissemination of a work is a circumstantial argument.

4   [*Three Boys Music.*, 212 F.3d at 482.]  It is based simply on the reasonable

5   opportunity for a party to have seen the work, not proof that the party in question

6   actually viewed the work.  [*See id.*]  The consideration of access is closely tied to the

7   facts, making the issue generally not suitable for resolution on a motion to dismiss or

8   motion for judgment on the pleadings.  [*See id.*]

9        As the Ninth Circuit recently explained, as a practical matter, the concept of

10  "access " is increasingly diluted in our digitally interconnected world . . . access may

11  be established by <u>a trivial showing</u> that the work is available on demand.  [*See*

12  <u>Skidmore v. Zeppelin</u>, 952 F.3d 1051, 1068 (9th Cir. 2020).]

13       As alleged in the FAC, Plaintiff uploaded the Script to The Blacklist, which

14  was a prominent online platform utilized by writers, screenwriters, movie industry

15  professionals, agents, managers, producers, directors, actors, and screenwriters to

16  expose their works and locate projects.  The FAC specifically alleges that defendant

17  Segel had access to and utilized The Blacklist.  [FAC ¶¶ 16, 19.]  These allegations

18  must be accepted as true and establish a reasonable possibility of access (and

19  certainly more than the "trivial showing" articulated in <u>Skidmore v. Zeppelin</u>) through

20  wide dissemination.[11]

---

[11] The decision in <u>Briggs v. Blomkamp</u>, 70 F.Supp.3d 1155 (C.D. Cal. 2014) (a summary judgment case) does not support Defendants' argument that Plaintiff has failed to allege access by wide dissemination.  Critically, <u>Briggs</u> is a summary judgment case not a pleading case.  While the court in <u>Briggs</u> found that the posting on a screenwriter website did not establish access, the court's decision was based on the defendant's declaration that he had never heard of or visited the website in question.  Simply put, the <u>Briggs</u> case was decided on the <u>evidence</u> and <u>not on the pleadings</u>.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1

c.   Striking Similarity

2        The Ninth Circuit employs a sliding scale approach to access and substantial

3   similarity such that if two works are so strikingly similar as to preclude the possibility

4   of independent creation, copying may be proved with a lesser showing of access or

5   even no access at all. [*Three Boys Music*, 212 F.3d at 485 (in the absence of any

6   proof of access, "a copyright plaintiff can still make out a case of infringement by

7   showing that works at issue are strikingly similar"); *see also Smith v. Jackson*, 84

8   F.3d 1213, 1220 (9th Cir. 1996); *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.

9   1987) (access may be inferred from "striking similarity"), *cert. denied*, 484 U.S. 954

10  (1987).]

11       The concept of "striking similarity" is simply a short-hand way of articulating

12  that the infringing work could not have been independently created.  [4 *Nimmer on*

13  *Copyright* § 13.02[B] ("At base, 'striking similarity ' simply means that, in human

14  experience, it is virtually impossible that the two works could have been

15  independently created.").]

16       As discussed more below, the subject matter of the Script and the Accused

17  Work is the same.  Both tell the story of a female character whose brain and body are

18  damaged by a traumatic event which results in severe brain injuries and induces a

19  coma, paralysis and "locked-in syndrome" and which catapults the character into the

20  fantastical virtual reality land of Otherworld where the character encounters a world

21  of surrealistic landscapes and dreamlike terrains inhabited by hostile spirits, strange

22  creatures, odd archetypes and whimsical characters.  As further discussed below,

23  there are numerous similarities between characters, plot lines, themes, and dialogues.

24       This similarity simply cannot be explained or excused by independent creation.

25  The Script and Accused Work are "striking similar" for the reasons discussed herein,

26

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1   which is a separate and additional reason why Defendants' access argument must be

2   rejected.

3              2.   The Script and the Accused Work are Substantially Similar

4         If the Court decides to address the substantial similarity issue despite the lack

5   of an adequate record (as discussed above), the only issue that the Court may analyze

6   is the "extrinsic test" element of the copyright infringement analysis. [*See*

7   *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116 (9th Cir. 2018), *overruled on other*

8   *grounds by Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).] At the outset, we

9   note that substantial similarity is "a question of fact uniquely suited for determination

10  by the trier of fact." [*Jason v. Fonda*, 526 F. Supp. 774, 777 (C.D. Cal. 1981) *citing*

11  *Walker v. University Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979).]

12        The Ninth Circuit has long held that "[s]ummary judgment is 'not highly

13  favored' on questions of substantial similarity." [*L.A. Printex Indus., Inc. v.*

14  *Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012).] The Ninth Circuit therefore

15  warns that courts must be just as cautious before dismissing a case for lack of

16  substantial similarity on a motion to dismiss.

17        Consequently, dismissal is warranted only if, "as a matter of law[,] the

18  similarities between the two works are only in uncopyrightable material or are de

19  minimis." [3 William F. Patry, *Patry on Copyright* § 9:86.50 (2020).] For dismissal,

20  it must be the case that reasonable minds could not differ on the issue of substantial

21  similarity. [See *L.A. Printex*, 676 F.3d at 848; *see also* 3 *Patry on Copyright* §

22  9:86:50; 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §

23  12.10[B][3] (2015)

24        Under the extrinsic test, the court looks to specific, "articulable similarities

25  between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of

26  events," to determine whether a defendant unlawfully copied enough protectable

27

28
──────────────────────────────────────────
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1   expressive elements to render the two works "substantially similar." [*Kouf v. Walt*
2   *Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (citation omitted).]

3       Here, Defendants employ the predictable defense strategy of trying to focus the
4   Court on the differences between the Script and the Accused Work rather than the
5   similarities.  That is the exact opposite of the analysis that is required.

6       The Ninth Circuit has repeatedly rejected a "dissimilarity" analysis in
7   determining substantial similarity.  [*See, e.g., Aliotti v. R. Dakin & Co.*, 831 F.2d 898,
8   901 (9th Cir.1987).]  In the words of Judge Learned Hand, "[I]t is entirely immaterial
9   that, in many respects, Plaintiff's and Defendants' designs are dissimilar, if in other
10  respects, similarity as to a substantial element of Plaintiff's work can be shown. If
11  substantial similarity is found, the defendant will not be immunized from liability by
12  reason of the addition to his work of different characters or additional or varied
13  incidents . . . " [*Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 55 (2d
14  Cir.1936), *cert. denied*, 298 U.S. 669 (1936).]

15      Similarly, as explained by Professor Nimmer: "Insofar as . . . liability may turn,
16  in some degree, on the importance of the original material that defendant adds to the
17  copied material, this is an erroneous statement of the law.  It is entirely immaterial
18  that, in many respects, plaintiff's and defendant's works are dissimilar, if in other
19  respects, similarity as to a substantial element of plaintiff's work can be shown. . . ."
20  [4 *Nimmer on Copyright*, § 13.03 [B][1][a].]

21      Stated another way, that Defendants may not have copied the entire Script or
22  even portions of the Script does not matter.  [*Sheldon v. Metro-Goldwyn Pictures,*
23  *Corp.*, 81 F.2d 49, 56 (2d Cir. 1936); *see also Williams v. Crichton*, 84 F.3d 581, 588,
24  590 (2d Cir. 1996) *citing Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992); *Shaw v.*
25  *Lindheim*, 919 F.2d 1353, 1362-63 (9th Cir. 1990) ("Even if a copied portion be
26  relatively small in proportion to the entire work, if qualitatively important, the finder

27

28

1  of fact may properly find substantial similarity."); *Paramount Pictures Corp. v. Carol*

2  *Pub. Group*, 11 F. Supp. 2d 329, 334 (S.D.N.Y. 1998) ("Copying only small portions

3  of a copyrighted work offers no protection").]

4       Thus, Defendants' analysis of the supposed differences between the Script and

5  the Accused Work is immaterial.  Infringement rests on <u>similarities</u>.  As demonstrated

6  below, the similarities between the Script and the Accused Work are substantial.  The

7  FAC has an extensive discussion about the massive amount of similarities between

8  the Script and the Accused Work.  [See FAC pp. 31-71.]  A summary of some of the

9  more critical, dramatic and obvious similarities, which show that the Accused Work

10  is the product of copying, are the following:[12]

11       <u>Plot/Sequence of Events</u>: The plot of the Script as compared to the Accused

12  Work contains similarities so numerous that it is all but impossible to conclude the

13  defendant Segel and his co-author wrote the Accused Work without reading and

14  copying Plaintiff's Script.  An obvious and critical similarity at the core of the plot

15  and unfolding sequence of events of both the Script and the Accused Work is that one

16  of the two main protagonists (Alethea in the Script and Kat in the Accused Work)

17  suffers from a horrific accident that results in a traumatic brain injury that induces a

18  coma, paralysis, and locked-in syndrome.

19       Both Alethea (Script) and Kat (Accused Work) experience terrifying and

20  horrific nightmares that stimulate involuntary silent (partial) screams due to effects of

21  the coma, paralysis, and locked-in syndrome.  Alethea (Script) and Kat (Accused

22  Work) both share the same driving desire to awaken from the clutches of a virtual

23

24

[12]  The only support that Defendants offer in support of their argument that there is no
25  substantial similarity under the extrinsic test is the self-serving rhetoric of their own
attorneys about the supposed differences between the Script and the Accused Work.
26  [See Def. Mem. at pp. 14-20.]  Of course, such self-serving attorney rhetoric is
meaningless and does not prove anything.  Rather, the Court must analyze the
27  allegations of the FAC as well as the Script and the Accused Work.

28  **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

reality world that can trap not only their souls, but the souls of other suffering inhabitants stuck in the many dream-like worlds within Otherworld.

Additional critical plot similarities between the Script and the Accused Work are that there are two initiates (virtual reality players) specifically chosen by supporting characters (via extreme circumstances) to complete their individual journey (turned shared mission) which involves: (1) accessing the deeper terrains of Otherworld through a hidden entrance, (2) warding off impending death not only for themselves, but for other inhabitants in Otherworld by eradicating the Creator of Otherworld, (3) freeing suffering souls trapped in the virtual world of Otherworld, and (4) destroying the creator of Otherworld.

Other similarities are:

- Main protagonists in the Script (Alethea and Julian) and Accused Work (Simon and Kat) travel the same virtual reality terrains (separately) with Otherworld guardians, guides and allies they encounter along the way.
- Alethea (Script) and Kat (Accused Work) have first-hand knowledge and experience of the virtual world (and its inhabitants) before their intended counterparts, Julian (Script) and Simon (Accused Work) experience them.
- Supporting characters (friend or foe) who initially guided Alethea (Script) and Kat (Accused Work) are the same characters that will initiate and secretly guide Julian (Script) and Simon (Accused Work) to their female counterparts.
- The main protagonists in the Script (Alethea and Julian) and the Accused Work (Kat & Simon) only intersect and reunite in the virtual reality world when they are ready (and about to) access the entrance to Otherworld. When each protagonist pair crosses through the entrance to

1               Otherworld (together) they become stronger  and more capable in

2               combining forces to eradicate the creator of Otherworld.

3       It simply is not believable and defies common sense that all of the foregoing

4 similarities between the Script and the Accused Work are the product of coincidence

5 or independent creation as Defendants apparently want the Court to believe.  On the

6 contrary, the only creditable explanation for the foregoing similarities (and the other

7 similarities alleged in the FAC) is copying.

8       <u>Themes</u>:  Thematically, the story in both the Script and the Accused Work is

9 essentially the same.  Both the Script and the Accused Work imply that that nothing

10 is what it seems and raises the questions: "What is real?" and "What is reality?"

11 "How much power and will does one have to alter, control, overcome, and break free

12 from an imprisoned virtual or projected reality?"  And, "How would one know the

13 difference?" Also, "Do we create our own virtual prisons in our minds or fall prey to

14 ones manufactured for us by outside forces?

15       <u>Dialogue</u>:  Given the limitations in the Court's rules about the length of briefs

16 in opposition to a motion like the present one, Plaintiff is not able to list all examples

17 of similarity between the dialogue in the Script and the dialogue in the Accused

18 Work.  Instead, Plaintiff refers the Court to pages 31-71 of the FAC, which sets forth

19 numerous examples of the similarities between the dialogue in the Script and the

20 dialogue in the Accused Work.

21       <u>Mood and Pace</u>:  Although the Script is a screenplay and the Accused Work is

22 a full-length book, something that can distort pace and mood similarities, there are

23 nonetheless noticeable similarities between the works.  Pacing in both Script and

24 Accused Work involves weaving in and out of reality and non-reality landscapes.

25 Real time pacing is used in both works for the "real world" scripted sequences.

26 Elongation and suspension of time is used in both works for fantasy worlds. Pacing in

27

28

both works slows for introspective and contemplative moments but picks up when fight scenes and unexpected moments arise.

Contrary to Defendants' contention, the mood of the Accused Work most definitely is not "distinct" from the mood of the Script. On the contrary, both the Script and the Accused Work share many moods which are strikingly similar to one another. There are sensual scenes, action scenes, adventurous scenes, dream sequences, seductive scenes, lighthearted scenes, graphic horror scenes, fight scenes, visually thrilling scenes (hallucinations, three-dimensional holograms, virtual projections), foreshadowing scenes, and profound discovery scenes, that are virtually identical in both works. The mood and pace of the Script substantially mirror analogous parts of the Accused Work and therefore support a finding of substantial similarity.

Settings: The story in both the Script and the Accused Work focuses on "Otherworld," which is a hidden virtual reality world at the core of the story of both the Script and the Accused Work. Of course, defendant Segel and his co-author Miller did not copy exactly the various unique settings in the Script. Instead, as is typical of infringers of literary works like the Script, they did some modification of the settings to try to hide their infringement. Despite such efforts, it is plain and obvious that the settings in the Accused Work are substantially similar to the settings in the Script as follows (the following discussion identifies various settings in the Accused Work and the similar settings in the Script):

THE WHITE CITY: Substantially similar to the Abandoned Streets of Downtown Fray Town in the Script.

IMRA/Resort of The Future: Substantially similar to the dark underside of Fray Town and the Exotic Bar FIXATE in the Script.

IMPERIUM/The Far Side/Outskirts of Ice Field:  Substantially similar to the Abandoned Industrial Ghost Town, the Industrial Neighborhood on the outskirts of the City and in the Fragmented World and the Otherworld Desert Landscape in the Script.

THE JUNGLE: Substantially similar to the abandoned city streets of Fray Town  and the Dead End Alley on the outskirts of Fray Town and the City (where the Power Plant Building houses The Gateway) in the Script.

MAMMON: Substantially similar to The Bridge toll way controlled by Lepers that leads to the Abandoned Industrial Ghost Town, the industrial neighborhood on the outskirts of the City and the Otherworld Desert Landscape in the Script.

THE WASTELANDS:  Substantially similar to the Dead End Alley and a portion of the Otherworld Desert Landscape in the Script.

NASTROND:  Substantially similar to the Otherworld Desert Landscape and the outskirts of Fray Town in the Script.

THE CANYON:  This setting in the Accused Work is a dangerous foot toll-way in a canyon controlled by flesh-eating cliff dwellers and homicidal flesh-eating monkeys on the outskirts of The Wastelands beyond Nastrond.  This setting is virtually the same as The Bridge in the Script, which is a dangerous foot toll way on the outskirts/edge of Fray Town controlled by flesh-eating Lepers.  The two settings essentially are the same – such similarity can only be explained by copying.

Characters:  Defendants try to convince the Court that the characters are different (which as discussed is the wrong analysis) because the main characters in the Script are adults and the main characters in the Accused Work are teenagers. That is an unimportant difference for the substantial similarity analysis because the characters in both works share virtually identical traits, characteristics and experiences.

The most important and most striking similarity of characters in the Script and the Accused Work is between the female protagonists, Althea and Kat. Both are willful, strong, mission oriented, whip smart, clever, and moody. Both have powerful secret identities and skills that allow them to subdue adversaries and gain allies in Otherworld.

The ancillary characters also share substantial characteristics and traits. Both works feature male protagonists (Julian and Simon) that perform the same functions in story development and share the same personality traits. Likewise, there is significant overlap and similarity between the other characters in both works: there are aging/vintage-looking gangsters in both works (this direct similarity alone shows copying). Both Julian and Simon have secret female allies (Esse in the Script and Busara in the Accused Work) to assist them in their journey through the virtual reality world. There also is an evil creator of Otherworld in both works who has henchman (Egon & Otto in the Script and Martin & Todd in the Accused Work) to carry out evil works.

The remarkable similarity between the characters in the Script and the Accused evidence cannot be explained by independent creation -- on the contrary, it is compelling evidence of copying.

In summary, application of the extrinsic test requires the Court to examine "articulable similarities." The FAC articulates over 40 pages of similarities between the Script and the Accused Work. The Ninth Circuit has reversed the grant of summary judgment in cases where far fewer similarities were alleged, and with far lesser detail. [*See, e.g.*, *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1329-30 n.5 and n.6 (9th Cir. 1983).]

Defendants' argument at page 13 of their memorandum about so-called "stock concepts" does not save them from a finding on this motion that the allegations of the

FAC satisfy the extrinsic test and judgment on the pleadings is not warranted.  At lines 16-21 and footnote 15 on page 13 of their memorandum, Defendants identify supposed "stock concepts" that they contend must be "filtered out" of the Court's analysis.  There are two problems with this argument:

First, the matters discussed in Defendants' footnote 15 are matters outside the pleadings and not referenced in the FAC so they are not the proper subjects of judicial notice.  Indeed, Defendants have not even asked the Court to take judicial notice of the information in footnote 15.  Consequently, the Court may not even consider such materials or Defendants' "filtering" argument.  [*See Smith v. AMC Networks, Inc.*, 2019 WL 402360 (N.D. Cal. Jan. 31, 2019).][13]

Second, in making its "filtering" argument, Defendants ignore the well-established principal that the combination of otherwise "generic similarities" and "common patterns" may suffice to satisfy the extrinsic test for substantial similarity. [*Metcalf v. Bochco*, 294 F.3d 1069, 1073-74 (9th Cir. 2002).]  Here, even more plot and event similarities are alleged than in *Metcalf*. [See FAC pp. 31-71; *see also Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990) ("Even if none of these plot elements is remarkably unusual in and of itself, the fact that both scripts contain all of these similar events gives rise to a triable question of substantial similarity of

---

[13]  Just as Defendants do here, the defendant in *Smith* argued that the work at issue there was comprised of "generic elements of action adventure, thriller, and horror films and television series, including those involving invasions or outbreaks of some sort and those that take place at sea."  Like Defendants here, the defendant in *Smith* referenced various source materials to support their argument but did not ask the court to take judicial notice of the underlying source materials.  The *Smith* court refused to consider the materials offered by the defendant, explaining that the defendant (just like Defendants here) in essence was asking the court to consider its materials based purely on the defendant's representation that the underlying works, of which the court was not asked to take judicial notice, show that the concepts argued are generic.  Just as the Court should do here, the *Smith* court refused to consider the defendant's materials, finding that whether the concepts argued by the defendant were are generic is subject to reasonable dispute, and the court, pursuant to Ninth Circuit law, cannot take judicial notice of any facts that are subject to reasonable dispute.

1  protected expression.").] Consequently, the "filtering" argument is without merit and

2  does not help Defendants.

3       The bottom line here is that the allegations of the FAC and the works at issue

4  demonstrate that there are a tremendous amount of similarities between the Script and

5  the Accused Work. "[T]he totality of the similarities . . . goes beyond the necessities

6  of the . . . theme and belies any claim of literary accident." [*Shaw*, *supra*, 919 F.2d at

7  1363.] Plaintiff consequently has satisfied the extrinsic test by its pleadings and

8  Defendants' request for judgment on the pleadings therefore must be rejected.

9       3.   That Defendants Used The Exact Same Title As Plaintiff Shows

10           Copyright Infringement

11      The titles of the Script and the Accused Work were identical before Defendants

12  tried to hide their infringement by adding the phrase "the last reality" to the title.

13  More than just a word, "Otherworld" expresses plot, setting and theme, and relates to

14  the characters and their adventures.  Tellingly, Defendants never used the title

15  "Otherworld" before copying Plaintiff's Script.

16      Although titles are not independently copyrightable, they can be a factor in the

17  substantial similarity analysis. Thus, in *Shaw*, *supra*, the Ninth Circuit wrote that

18  copying a title may "have copyright significance" and "acknowledge[d] and

19  consider[ed] defendants' admitted copying of Shaw's title in determining whether

20  there is substantial similarity of protected expression between the two works." [*See*

21  *Shaw*, 919 F.2d at 1362 (citations omitted); *see also Benay v. Warner Bros. Ent., Inc.*,

22  607 F.3d 620, 628 (9th Cir. 2010) ("copying of a title may [. . .] have copyright

23  significance as one factor in establishing an infringement claim").]

24      Like Shaw, the fact that Defendants copied Plaintiff's title also shows

25  substantial similarity and copyright infringement.

26

27

28

1      **C.**    <u>This Motion Should Be Denied Because Defendants' Challenges To</u>

2                <u>Plaintiff's Trademark Claim Raise Triable Issues Of Fact That Cannot</u>

3                <u>Be Resolved By A Motion For Judgment On The Pleadings</u>

4      Defendant contends that it is entitled to judgment on the pleadings on

5  Plaintiff's claim for infringement of Plaintiff's federally-registered trademark

6  pursuant to the Second Circuit decision in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir.

7  1989) (which has been adopted by the Ninth Circuit). Once again, Defendants ignore

8  that the present motion is a pleading motion where the Court cannot decide any issues

9  of fact.

10      Under the *Rogers* test, the first inquiry is whether Defendants use the term

11  "Otherworld" as the title of an "expressive work." Plaintiff does not dispute that the

12  Accused Work is an expressive work. However, Defendants may still be liable for

13  trademark infringement if their use of the Otherworld title (1) is not artistically

14  relevant to the work; or (2) explicitly misleads customers as to the source or content

15  of the work. [*See Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018).]

16      Critically, Defendants do not cite any cases where application of the foregoing

17  factors was decided on a motion for judgment on the pleadings. Even if we assume

18  for the sake of argument that Defendants' use of the Otherworld title is artistically

19  relevant to the Accused Work, the issue of whether Defendants' use of the

20  Otherworld title explicitly misleads customers as to the source or content of the

21  Accused Work raises a triable issue of fact that cannot be resolved on a motion for

22  judgment on the pleadings. [*See Gordon*, 909 F.3d at 271.]

23      Defendants also claim they are entitled to judgment on the pleadings because

24  Plaintiff supposedly has failed to adequately allege priority of her trademarks in

25  commerce. This argument is without merit.

26

27

28

1   Plaintiff has alleged that she is the owner of United States trademark
2   registrations for the term "Otherworld" and the phrase "Otherworld is Just One World
3   Away." [See FAC p. 2.]  As the owner of such federal trademark registrations,
4   Plaintiff enjoys statutory presumptions that the marks are valid, that Plaintiff owns
5   the marks, that Plaintiff has the exclusive right to use the mark in commerce
6   nationwide, and that Plaintiff has priority. [See 15 U.S.C. §§ 1057(b), 1115(a); *see*
7   *also Dep't of Parks Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th
8   Cir. 2006); *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132,
9   1140 (C.D. Cal. 2007).]

10  These statutory presumptions defeat Defendants' request for judgment on the
11  pleadings on the trademark claim and mandate denial of this motion.[14]

14  DATED: August 31, 2021

16                                    By: _____
17                                        Sophia Segal
                                          Plaintiff Pro Se

26  [14] If the Court believes that the allegations of the FAC are not sufficient with respect
    to the trademark claim, Plaintiff requests leave to amend to provide further and
27  additional allegations in support of such claim.

28  **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
    DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**